Boatman. Alright. Mister Jeffrey. We're ready when you are. Go ahead. May it please the court, I'm Jim Jeffery. I have the honor of representing Police Officer Carl Carson. I'm sure from the briefs both sides have submitted you're familiar with the general facts, but I think there's some important things to consider on this appeal of a qualified immunity and absolute immunity assertion. First, Carl Carson followed this resolution of the immunity defenses. He filed a motion to dismiss and an early assertion of immunity and alternatively sought a Rule 7 reply, which the court ordered. The Rule 7 reply was in the form of an amended complaint. He filed a second motion to dismiss, which was granted in large part denied on the one issue we're here on, which is plaintiff's claim that he somehow falsely fabricated or accused Mr. Cole of committing the offense of aggravated assault on a police officer. Now, this is a case . . . This is an appeal for a motion to dismiss, which the district court declined to grant, correct? Yes, Your Honor. Okay. So we have to take those facts as they're alleged here, of course, to be in favor as true for purposes of our review. That's correct. The well-pleaded facts, not the . . . As I read the allegations, they are that the police officers following this shooting is not complaining directly about the unlawful use of force in the shooting itself, but rather it is claiming that the officers then fabricated evidence, conspired to restate the facts and present them in a way to cause him to be indicted, and that their purpose, of course, was to . . . His back was to them, and his gun was to his head, and that only in the . . . They changed the facts to have him turn around and to lower the gun down, and that it was simply a complete fabrication. If you accept those facts, the argument is that that in and of itself is a distinct and substantive denial of due process. You simply cannot fabricate evidence. The State cannot fabricate evidence. Now, that's, as I understand it, why isn't that . . . What's wrong with the plaintiff's allegation in that regard? I'll answer your question. I'm just trying to summarize it to focus what I think the issues are. What's wrong with that, Your Honor, is that the Supreme Court in Albright v. Oliver and this Court in the Castellano case rejected a 14th Amendment substantive due process claim based on a theory that a person has a 14th Amendment substantive due process right prior to trial. Instead, you look to the Fourth Amendment, and the Fourth Amendment . . . In order to find a violation of the Fourth Amendment, in this case, you'd have to find an absence of probable cause based on the facts known to the officer. Here, we have a situation different from any case cited by the plaintiffs in any of their briefing here or at the trial court. That is, you have a young man holding a gun in a public place. He was charged with unlawfully carrying a weapon. The public record shows that he essentially confessed, judicially confessed to that offense as part of a plea bargain. That is, that offense had occurred, and they entered a deferred adjudication plea bargain arrangement. When was the assault charge dropped? Was it dropped at the same time as the adjudication? Yes. I'm sorry. Yes, it was dropped, and I didn't hear your question, Judge Higginbotham. I did not hear your question, Judge Higginbotham. Go ahead. Well, and that's what's so important of a difference about this case. There is not an assumption that there was a trial or any events that would cause an adjudication. So your argument to us is the only clearly established right that could ever exist in a pretrial context is the Fourth Amendment. And for that proposition, you cite Albright and Castellano. And then when you look at the Fourth Amendment, you say, well, Devenbeck says there's always another probable cause that had him detained. And therefore, you're not saying there's no right. You're saying there's no injury because he was detained on that separate PC. Is that your argument? Very close to what I'm saying, Your Honor. If you look at the Fourth Amendment claims, and if you look at all of the various theories, because the plaintiff's theories are moving targets on what they're trying to assert, all of the plaintiff's theories of recovery require some sort of recognized prejudice or harm. And under the Fourth Amendment, under Castellano and Albright, if there's probable cause, and Devenbeck, if there's probable cause at the time of the so-called seizure or arrest, which in this case there was never an arrest, then you But that sort of points out the oddity. I mean, the two other officers who shot, they use of deadly force, not within the Tennessee versus Garner framework, would mean there was an unreasonable seizure. Your client's different because he didn't shoot. So your argument is, okay, there is a pretrial seizure, forget the word arrest, seizure, but Devenbeck stands your, I don't see the leap. Devenbeck says, well, even if he was seized or had restricted liberty interests, both when the grand jury charges him and second when he's put on home detention, we can overlook that injury if there's a false assault charge, because he was in on the unlawful possession charge? Well, no. In fact, if you look at Castellano, what Castellano said, recognizing what the something short of an arrest is not subject to Fourth Amendment analysis. And that's what we have here. Yeah, I'd happen to write that opinion. I'd rather leave the last person you should look to about to interpret it, and I mean that sincerely. But to me, there's a vital distinction here in that when the allegation essentially that the officer that stayed here framed this young man, that he was in a crime of aggravated assault. And he was obviously guilty of carrying a weapon and so forth, but that's not the basis of what this was done. And that in and of itself, what you're saying is that police officers can make up evidence, hide evidence, and then cause a man to be indicted and tried or whatever, but then have no constitutional deprivation. I mean, it presupposes that there's no basis for that. The truth of this is that they've made this all stuff up. See, that's the problem with the procedural posture we're in. I don't think that's a problem. I think that if you look at all of the cases cited by the plaintiff and by the defendant, and if you're looking to, is there a constitutional context for a violation that can be the basis of a claim, there always has to be prejudice at results. And here, you're talking about, under the plaintiff's theory, a substantive due process standpoint, if there's no prejudice, then there's no claim. Why aren't the manufactured charges prejudiced? Why isn't the existence of being subjected to these lies, these manufactured assault charges, why isn't that prejudiced, even though there's no conviction or anything? If you look at the Albright case and I think at the Castellano case, the context of the claim that has to be made under the Fourth Amendment requires a seizure or a search or an infringement of liberty. And the kinds of things, Judge Clement, that you're talking about are the kinds of things that I believe Castellano, no, I think and I believe Castellano's states and Albright states are not recognized claims under the Fourth Amendment. Let me give you a hypothetical. Suppose that in the trial of a felony case, the prosecutor conspires with a witness to give false testimony and he gives false testimony. And you're saying that that is not a substantive due process violation? At trial, that would be. It doesn't matter. I mean, it started off in the trial and the allegation that the DA conspired with a key witness to give false testimony. We have these claims periodically made that the prosecutor knew that when he put this witness on, he was lying, et cetera, et cetera. But my hypothetical is going a step further than that. The prosecutor conspired with a witness to give false testimony, to manufacture evidence, the key evidence in the case, to produce the bloody handkerchief that didn't otherwise exist. If you look at the Supreme Court's Rayburg case that deals with absolute immunity, if the prosecutor or the officer is serving in the role of an investigator and stepping outside of his ordinary prosecutorial role, or if the police officer is serving in a investigatory function, then there might be a claim that could arise. Otherwise, if the prosecutor is acting as a prosecutor, he's entitled to absolute immunity. That's the point. There are limits upon the immunity that surrounds prosecutorial role, and an officer's qualified immunity, too. That is, when you move to the arena of fabricating evidence itself and to making it up and lying to the court, to a witness, not because you protect the police officer, I mean, or the prosecutor, give him absolute immunity, essentially they put on a witness and they're not vouching for him in that sense. But if you move a step beyond that, it's quite different, though, when the prosecutor, in my hypothetical, for whatever reason, of animus, whatever, conspires with a witness to supply a key element to the case and fabricates it itself. Well, if the prosecutor is acting in the role of a prosecutor, not an investigator, and it sounds to me like you're talking about an investigatory role, he would only be entitled to qualified immunity. Yeah, and so, in this case, it's all investigatory. No, in fact, Judge Higginson, if I can explain what Carson was doing, and I think under the qualified immunity analysis, the court has to look at the 2.37 seconds that he's being sued for, and what the plaintiff's complaint actually says about what happened during those 2.37 seconds. And the plaintiff's insisted on attaching about 60 pages of so-called expert affidavits, and you need to look at what those affidavits say happened during the 2.37 seconds that he's being sued for. And you have to find an absence of probable cause. Well, no, that's, as I understand their case on Carson, it's the post-shooting cover-up. And therefore, let me finish here. It would seem to me there are multiple moments that the 4th, 5th, 6th, even 8th amendments all apply to. Arrest is one. Then you have an initial appearance, and you have a detention hearing. And there are plenty, let's say you concoct a felony violent crime charge against a minor. That creates a rebuttable presumption that you're going to be held for trial. That would be a liberty interest that is a pre-trial liberty interest, right? It is. Okay. So why isn't the restriction on his liberty that applied here one that would be recognized? Because it's not according to Castellano and Albright. Well, but what about, have you looked at a case called Evans v. Ball, our court? Are you familiar with that case? Not offhand. Okay. That built on the Ginsburg concurrence in Albright saying restrictions on liberty implicate liberty interests, short of full detention, which seems fairly convincing to me. But he was being held on the possession charge, right? The same amount of time he was being held until they dismissed the assault charge. Yes. Does the record establish that? No, that's why we had to ask. I couldn't figure it out. The record establishes that whatever the detention hearing was, was exclusively based on the unlawful possession. The prosecutor never said, oh, and your honor, put the home arrest conditions on because look, it was an assault on us. The record is silent about what he was charged with and whether there was even a hearing. To answer your question, and I think it's important to look at what he did. He's accused of, after the fact, fabricating things based on the 2.37 seconds. The record clearly has Carson and both experts swearing in their affidavits that are attached and incorporated into the complaint. His view of what happened was obstructed. All right. Yes. I understand that. And the young man held a gun. The young man turned and the shot— But that's a point in factual dispute.  He shot him in the back, hit him in the side. Another shot struck the arm here, which indicates it would have been while he was facing the person shooting. Where was the handgun when the shot was fired?  He died from the gun to his brain. The handgun was in his hand with the finger on the trigger. And there's not a claim in the complaint that the handgun never moved. I understand there was stripling at the temple. Yes. Close contact, discharge a weapon to the temple. I don't know how you do that if you're pointing at the officer. Unfortunately, the summary judgment record that we can't talk about explains that. But that's not what we're here on. But to answer— Well, I think you are. I think that, as I understand the allegation, as you fabricated this story, it's sort of an elaborate throw-down. The police officers, their theory is that the police officer made a huge mistake and that they saw the kid with a gun, with the police report they had, and two of the three officers started firing. And the result of that was that the kid had the gun pointed to his temple, his back to them, and he didn't succeed in killing himself, but left himself devastated, I suppose, physically. In any event, that's what— And then the police officers, seeing and knowing darn well what was coming, they proceeded to cover it up. And they covered it up by getting their story straight, that they had to turn him around and they had to, again, lower the gun to be a threat to them to justify their use of force that they did. And that that was a complete fabrication. Now, whether they can prove that or not, I don't know. But we're here on a motion to dismiss, and that's my concern. If I may answer— Yes, please. If you look at the complaint and you look at the two expert affidavits that the plaintiffs insisted, over our objection, be considered as part of the complaint, you have a young man during a 2.37-second interval. He's not got his back to the officers when shots hit him. He's turning. He's hit in the side. He's hit in the outer part of this arm, indicating the direction of fire. How did he shoot himself? And they also said that they lowered the gun. So how did he shoot himself in the temple? He could have shot himself while he was falling. He could have shot himself as shots were being fired. But the point is, he's holding a deadly weapon with his finger on the trigger. How can an officer not believe there's probable cause to show that there's a threat under Texas Penal Code to harm a public servant with a deadly weapon under those circumstances where he's turning? And that's what this case hinges on. And if you look at this court's Brown and Lyford case, the court in that case said there must not even be arguable probable cause in order to penetrate the qualified immunity. And that's what we have here. We have a clear offense of the unlawful carrying of a weapon. And looking at what's alleged in the complaint and looking what the experts say, he's got a man with a loaded gun, finger on the trigger, turning towards the officers when the shots are fired by officers who are not Carson. All right. We've got it. Thank you. Thank you. We've got time for rebuttal. Mr. Ayers. Good morning. Good morning. My name is Jack Ayers. I represent Ryan Cole and his family.  on me and my brief. This is what happens when small firms have three briefs to do at the same time, I think. The first one is the case of Sanders v. English, which we furnished to you. I was just simply remiss in not shepherdizing Jeter II. I would have— Which you gave us this morning? Well, I hope they gave them to you several days ago, Your Honor. Because you gave us something this morning, of course, we have no opportunity to look at it. I'm sorry, Judge Clement. I'm apologizing for that right now. Okay. Sanders, I should have caught it. I should have shepherdized Jeter II. I knew better than that. Jeter II is well-established in this law, and that case is precedent in this court as recently as 2013. So if you shepherdize it or have your law clerks, you'll find the cases that I'm in reference to. That case is important for another reason. It rejects root and branch, this Devin—I guess it's a Devin Peck argument. I'm not completely sure what it is. But the argument that in some way fabrication of evidence or manufacturing of evidence survives scrutiny by the courts if it's accompanied by probable cause to arrest for an unrelated or related offense. Their argument is one that does have a pretty steady refrain in Supreme Court case law, which is if police fabricate evidence but they, quote, stick it in the drawer, there is no injury. Absolutely. And I agree with that. All right. So their argument here is it's the sort of functional equivalent of sitting in the drawer if the man was going to be arrested and held through trial on other charges that aren't disputed. That's the argument. Yes, sir. And the point that I would make in response to that is this circuit, this circuit has repeatedly ruled that whether or not there's probable cause to arrest for an offense does not dispose of manufacturing violations under the Fourteenth Amendment. Okay. You say repeatedly ruled. Absolutely. What are those? Let me go backwards. Good v. Curtis is a fairly famous case, relying on Castellano. Did that lead to a wrongful conviction? It did. Okay. One before? Good v. English did not. If the only injury was the arrest itself, that would perhaps follow, but the allegation here is that what you've done is to fabricate evidence that created a justification for the shooting, and that it's a cover-up of an improper shooting itself, and that the defendant brought it on himself. Precisely. Precisely. And I might add, there was some question about this. I'm not suggesting a misrepresentation. Maybe it's a misunderstanding. There was a hearing, and very strict conditions were imposed in the nature of house arrest, a custodial arrest. His freedom of movement was completely restricted. There was a detention hearing? I don't know if there was a hearing or an agreement of counsel, but there was an order entered specifying the conditions under which he would not be allowed. Was that order entered based on the government's argument that this is particularly dangerous because of the assault, or was the government's home restriction exclusively based on the unlawful possession? To my knowledge, both were in play. And the basis, as you know, Judge Higginbotham knows, I'm sure, a lot of people in Texas carry guns. That's a misdemeanor in Texas, if it's unlawfully carrying a weapon. And by the way, I'm not trying to dwell on this because I don't think technicalities of this sort are necessarily dispositive. Under Texas law, we have a very unusual thing, Judge Higginson, I know you taught in Mississippi, so bear with me. We have a weird system of deferred adjudication, and the way that works is if a person receives deferred adjudication for an alleged offense, and they live out the term as he has, they're not only entitled to have the record expunged, they're actually not guilty of the offense. It's as if the offense never occurred. Like pretrial diversion. Yes, sir. Federal assistance got them. And I'm not suggesting that that's dispositive, but to say that he pleaded guilty and was found guilty in terms of judicial pronouncements is simply incorrect. But that was just the possession of the weapon charge. No, ma'am. It was on both charges. The district attorney dismissed, once we uncovered the cover-up, the district attorney agreed to dismiss the aggravated assault on a peace officer or actually a public servant. So the deferred detention had already been pronounced before the assault charge was given? The only deferred detention I know of was the bond restrictions. What's alleged in the complaint is that he was significantly deprived of his freedom of movement. He was forced to retain counsel post the bond, was out of a number of fairly significant cases. What's your best case that post Albright and Castellano, those restrictions amount to a liberty interest that is recognized? Well, this is my second mistake, Judge Higginson. You referred to a case I've never seen or read, which is this Evans case, which refers to Judge Higginbotham addressed this in Castellano regarding Judge Ginsburg, Judge Higgins, I believe, said restrictions on travel. Our restrictions were much more definite than that. This young man was effectively under arrest even when he was in the hospital. Well, he was physically incapable of functioning. For a while. For a while he was. As he gained, as the complaint alleges, as he gained his strength and so forth, he was able to move around. There's no question, to answer your question, to counsel, his liberty interest was infringed by this order. Now let me make clear— I don't share counsel's position that this case is controlled entirely by the Fourth Amendment at all. I think the Fourteenth Amendment applies coextensively in these circumstances. In this unique circumstance, as the court held in Castellano, you have a person manufacturing evidence in this case that resulted in the charge being lodged against this individual. The nature of the manufacture was, he said, and it's in the record, it's pleaded in the complaint, it's supported by the expert's report, he said, I heard Hunter, who was the first officer that fired Judge Higginbotham, I heard him give a warning before he fired. As you know, a warning is required under Tennessee v. Garner if it's feasible. That was a lie. It wasn't a mistake because, oddly enough, there was a digital recording on the officer's person, and it recorded the fact that he did not give a warning, yet this man testified under oath that he did. So did his cohort, Lieutenant Cassidy. They were permitted to leave the scene, which is not standard investigative procedure, at least in any police department I've ever worked for, in a homicide case. So what does that result in? An unlawful detention, Fourth Amendment violation, or you seem to be saying it's a Fourteenth Amendment violation? We're saying it's a Fourteenth Amendment violation insofar as the manufacturing of evidence and the hiding of evidence. Sanders v. English, to answer your question. Your argument, as I understand it, is that it is not a procedural denial of due process. It is a narrow category of violations that is so antithetical to the whole process that it is substantive that, in and of itself, it is a denial of the violation of the Constitution. If you drop down from fabricating evidence deliberately, then you're into procedural due process in which the later probable cause and all these other things can wipe it out. But overall, you're getting procedural due process. But substantive due process, by its very character, is not redeemable by processes of any procedure or whatever else. You can give them all kinds of hearings. But if you fabricate the evidence, I thought that's what you were talking about. And to add to that, this is a manufacturing case. This is a fabrication case. Because he says, I heard him give a warning. Well, that's a requirement of the Fourth Amendment. You have to give a warning if it's feasible. Our expert reports say that it was feasible. They're attached to the complaint. The district court implicitly found that. The point I'm trying to make is, I can't unpack the substantive and procedural aspects of the Fourteenth Amendment as well as you can, obviously. The two members of this court were on that, but one was in the concurrence and one wrote the opinion. I'm certainly not going to presume to tell you what it means. But my impression is, if a police officer fabricates evidence, particularly in a case to cover up his own wrongdoing, and then, by virtue of that conduct, has someone incarcerated or placed under their liberty restrictions in such a way as to deny them freedom of movement, that states a claim in the Fifth Circuit under Costolano. Any suggestion— That's a Fourth Amendment violation. I think it's a violation of the Fourth Amendment as well. But if he's also being held for another crime that he did commit, then— That's exactly right. And I don't see where— Judge Higginson was all over that. —the overlap is. He was all over that. He talked about, do you think he would have gotten house arrest and not be able to go anywhere or do anything if it had only been possession of a firearm? Absolutely not. Well, but you can try to be all over the other side, which would be, let's say the fabrication were, yes, I was there, something insignificant. And yet, what there clearly were probable cause for was some heinous offense. You know, reverse it. I'd wonder if a 1983 action based on the pretrial detention would lie. Would there be injury? The closest I can get to that in your precedent, Judge Higginson, and I'm sure you probably already read the case as Good v. Curtis, that's the case in Irving, also out of the Northern District, where an Irving Police Department detective manipulated line-up photographs to have the defendant charged with rape. In fact, he was arrested, and the allegation was that there was probable cause for the arrest because it was issued by a magistrate or by the district judge, whoever, based on the officer's testimony. And this court went right through that, just like Judge Higginbotham said, and said if you manufactured that evidence, if you fabricated that evidence, it doesn't make any difference whether it was probable cause based on the magistrate's determination or not. That's so inimical to the process that this court stands for. There's no more monstrous violation of the law, in my opinion, than for a law enforcement officer to fabricate evidence and offer perjured testimony in support of it, simply to protect himself. The other concern, I think, the court has, and that is suggested by the questions, is that, okay, assume that's a constitutional violation, what do they talk about injury resulting from that? The suggestion is that, well, look, you can't complain about being arrested because he's guilty of an offense for which he can be arrested and was arrested for. What is the injury that you suffered as a result, assuming that that is a substantive violation? This is hard for me to, and I'm sitting here talking to a former professor and two people at Rowan-Castellano, so I'm really on very shaky ground telling you anything about this. I think there's a confusion between probable cause to arrest and the manner of seizure under the Fourth Amendment. You may have probable cause to arrest for unlawfully carrying a weapon. You had no probable cause to arrest for aggravated assault on a peace officer. Yeah, but that is the ambush. It confuses the arrest with the seizure, it seems to me. Tennessee v. Garner says that that seizure can't be effected unless certain safeguards are met. But I think there's that, I mean, I'm guessing, but that seems like why the two other officers aren't here. They would have an unreasonable seizure, use of deadly force, Tennessee, but this gentleman didn't shoot. And therefore, we really are confined to looking at what's the ongoing seizure post the shooting that he's ... The allegations of the complaint, which as I understand, I agree with Judge Higginbotham, have to be taken as true here, is that he was confined unlawfully. The restrictions placed on his movement, he was forced to post a large bond, he was forced to hire counsel, and all of the attributes that go with an unlawful prosecution. But that would have happened just on the simple possession charge. Absolutely not. There's no evidence of that. The pleading says ... There's no evidence it wouldn't. Well, the pleading says that those conditions were imposed as a result of the defendant's statements, Your Honor. But if the fabricates, it seems at the moment that the truth of the allegations of fabricating ... Yeah, but looking at the fabrication, the falsity, undoing that falsity, you would then have the picture of a young man who was apparently suicidal. That is, that the police officer then fired upon in such a fashion that they were beyond their qualified immunity. One of the consequences of that is the exposure to the police officers themselves, because they've gone beyond the bound ... Because there was absolutely no justification for the firing to begin with. But I don't understand you to be suing for his injuries. But the fabrication, in other words, if you say that they fabricated this, so the real problem out there is that three officers showed up there, and they saw the kid with a gun to his head, and two of them started shooting, and they didn't kill him, but they virtually did, and so you proceed against the police officers for money damages, defense is qualified immunity or not. Absolutely. But I don't hear in this lawsuit that you are complaining about the actual shooting itself. Well, what the complaint alleges is that he was untrained in the use of firearms. This is right out of the complaint. You can read it. It's before you. He was untrained in the use of firearms, and that he had his finger inside the trigger guard. And when he was shot by the officers, he involuntarily clutched his hands. That's the ... In the crime scene reconstruction, Captain Bevel refers to that, and he documents it. That's not an allegation against Mr. Carson. No, it's not. I was trying to answer the question about the shooting itself. That's what he's asking. No. Carson ... The allegation against Carson ... The officer, this defendant, was not a shooter. That's correct. But he could ... But he was part of the scene. I don't see how you get ... That's what's missing in this thing. The real injury here is the kid was shot, and ... Well, the injury's a twofold, Judge. And under this theory, they never should have been shooting it. They've got a suicidal kid. You don't talk somebody out of suicide by shooting them. I completely agree. They shouldn't have fired any shots. You have other lawsuits pending, don't you? No, Your Honor. As a result of the shooting ... This is our only lawsuit. ... by the two officers? No, Your Honor. This is just ... There's only the one case. Or against the police department? Nothing? The police department is sued, and the court has stayed discovery until the qualified immunity issues ... All right. But you've got another lawsuit pending. All right. That's what I asked. May I make this very clear?      It's important for you. It's important for me. It's important for you. It's important for you. It's important for me. It's important for you. that you understand, as I understand it, the allegations of the complaint, to the extent you find they're well pleaded, which the district court found they were, sets forth these three elements, these three things that Carson did, all of which were unlawful. The first one was he manufactured evidence saying that there had been a warning given when there had not been a warning given. Second, he perjured himself when he said, which Judge Higginbotham pointed out, when he said that the officer, what actually happened was, assuming you're Cole, that I'm Cole, excuse me, that the officer, that Cole turned around and pointed the gun at the officer. The physical evidence establishes that's impossible. You can't be shot in the left back when you're pointing a gun at somebody. And the stippling around the head wound establishes just what both of you said, that he's holding the gun to his head. So he manufactured evidence, he perjured himself, and then he concealed this exculpatory evidence from the tribunal for the purpose of covering up their own misconduct. Sanders v. English, which is the case I alluded to with you, Judge Higginbotham. When you say the tribunal, do you mean the grand jury? No. I guess it would be the district court in the Texas system. It had not been assigned beyond the grand jury. It was just in the hands of the prosecutor. I don't know which court it was in. In your suit against the city, in the course of that suit, I think that you would be saying that there's a failure to train and this is what ensued, and what you would be trying to prove is that what actually happened is not what these officers said, that they fabricated their evidence. They were lying and what really happened here is that, da-da-da-da-da, and that was because they had inadequate training, et cetera. So all that would be in that other lawsuit. That has an independent, substantive constitutional violation here, as may well be, but the real claim here, the real injury here, if it's right or if it's wrong, I don't know the fact. I mean, I don't know the outcome of that, is that the officers used unnecessary force and the city is responsible for that, for lack of training. They also have, by the way, Judge, I don't want to get off into this because it's not relevant really. They also have an unconstitutional policy on deadly force. Just to be completely honest, it's so difficult to prove a failure to train case now in the past. It's very difficult. I won't sit here and represent to you, Judge Higginbotham, I can prove it. When he asks for the real injury, though, you have to be specific. It's like what's the real right? As I see it, you charged the right deprived Fourth and Fourteenth. As to the injury, you're not, as to Carson at least, you're saying he had a liberty interest in being held for trial. You mean cold, yes. My client is cold. No. Carson's cold. No. Your claim, the injury caused by Officer Carson is the injury that he was held to answer for a felony charge. That he was falsely charged. That's the Fourth Amendment. How can you get through a Fourteenth Amendment violation for your 19 years? Well, but you have multiple injuries. You have held to answer, right, just the specter of a charge. That's one claim, whether courts have clearly established that. Then you have a separate injury when he gets restrictions on his liberty. I think that's correct. Then you would arguably have yet another interest to have fair trial. And then you finally have an interest against a conviction that is wrongfully obtained. But none of that happened. Well, the latter two don't happen. You don't get to trial. You don't have a wrongful conviction. But you were charged, number one, and you in fact were detained. Yes. For the court, the way I see it in my mind, and I'm not telling you how to see it, I'm just telling you how I see it, I think the unlawful shooting using excessive force is a Fourth Amendment violation without any question, that the fabrication of evidence and framing this kid for a crime. That's not a claim against Mr. Carson, Dom, whatever he is. I know, Your Honor. I was just addressing the lawsuit as a whole. No, but we have to focus on this lawsuit. Well, I'm out of time. You can finish your sentence. I'm sorry? You can finish your sentence. Well, I couldn't in good conscience say I was finishing my sentence, Your Honor. Good, an honest lawyer. I like this. Thank you, Your Honor. All right. Mr. Jeffrey. What say you? I wish I could say a lot, but I don't have much time. We're here on an interlocutory appeal on a qualified immunity defense. I think it's very important that Carson tried to follow this court's guidelines for seeking an early resolution. The burden was squarely on the plaintiffs to put enough in their complaint to show that he was not entitled to his immunity defenses. We've heard a lot of things here today that are not in the complaint. The complaint does not have all this information about exactly what happened at the trial court, at the criminal trial proceedings. The complaint does not have in it anything other than a broad allegation that he was subjected to a house arrest and that he had to hire a lawyer. Well, if you look at what seven of the nine Supreme Court justices said, when you're talking about pretrial proceedings in Albright and Oliver, you're talking about pretrial proceedings. That's not enough to invoke substantive due process under the 14th Amendment. You have to look at 4th Amendment. And when you look at 4th Amendment in the context of an absence of probable cause to overcome, there has to be an absence of arguable probable cause to overcome a 4th Amendment hurdle when you're in the context of a qualified immunity case like we have here. The plaintiffs haven't overcome that hurdle. There is probable cause for the unlawful carrying of a weapon, regardless of whether that offense went away procedurally because of the plea bargain. The facts in the complaint show he carried a weapon in a public place and that violates Texas law. When you look at the allegations in the complaint, which the plaintiffs insisted the court consider from their own experts, you have the events that were the basis of the alleged false charge, as known to Carson, occurring in 2.37 seconds while his view was restricted and while the experts describe, well, expert Mr. Bevel describes the man with the gun turning as the shots are striking him. He's not shot in the back. He's shot in the side and an entry wound on the front of his left arm. Since we've talked about the summary judgment answer, Judge Higginbotham, I mean the summary judgment materials, Judge Higginbotham, to answer your question, 30 inches is the best their expert would say. The gun was within 30 inches of the bed. I thought it was on a motion to dismiss. Well, my opponent talked about the summary judgment proceedings, so I wanted to answer your question that I didn't answer earlier. So if we're looking at how we got here and you look at the Jeter case and the Goode versus Curtis case, both of those cases involved fabrication of evidence that led both to a false arrest and to a conviction that had to be set aside and that's the kind of prejudice that attaches pretrial for Fourth Amendment false arrest or trial substantive due process prejudice resulting because they were prosecuted and convicted and Goode and Curtis, which the plaintiffs represent, is identical to this case. It's not. That's the case out of the city of Irving. The first arrest was on an unrelated DUI charge. The second arrest was based on the fabrication and manipulation of photographic lineup and live lineup evidence for the rape and burglary. Unrelated to a completely different incident from the earlier arrest on a DUI warrant. It sounds to me like you're facing a trial in which what happened out there is going to have to be explored and proving that that means the truth of what happened, of whatever that is, and the plaintiffs entitled to try to prove that these defendants fabricated this whole thing and so forth. That's going forward and that's the direct complaint and essentially that the young man should not, the police officer should not be fired at all and the city is responsible for that for warrant of training. This is sort of a side show to, I don't mean a show, but a side piece to that main, what is a component of the entire case and as to Carson, he's only being sued for ... That strikes me, that looks to me like I'm missing something. That's the main event and we've delayed, put aside the main event to deal with this one. The characterization of the lying is whether it's up to due violation or not. What counts there is what actually happened or not. In other words, if in fact they're lying and fabricated the evidence, the plaintiff has basically bade his case as to an underlying excessive force case and that's part of it. You've got the next problem as to whether or not that particular malfeasance or whatever mistakes were the product of inadequate training, so it sounds like you're going to go down the same path, but am I missing something here, I guess? We might and again, there's other motions and other proceedings that are pending, but as far as for Carson, he's being accused of fabricating evidence and the burden was on the plaintiffs to, after especially ... I understand that's the case and I understand it, but if Carson is lying and is fabricating evidence, that takes you a long way home toward the fact of what really happened in that shooting and that may or may not be adequate. In fact, he's lying and the truth is lost elsewhere that the boy never turned back to him, the jury's going to ... somebody's going to have to determine that. If you get there, it's the inadequate training. You've got to make the city in 1983 an actor, not vicariously liable, right? That's correct. So you're in the training, but you're still dealing with the underlying basic fact pattern, what happened out there? That is also correct. Okay, I got you. All right, thank you, sir. Thank you.